UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JERRY DEAN FERGUSON and <br> JULIE RENE FERGUSON, <br>    *Debtors/Appellants* <br> <br>    v. <br> <br> WEST CENTRAL FS, Inc. <br>    *Creditor/Appellee* <br> <br> JEANA K. REINBOLD, Solely As <br> Chapter 7 Trustee of the Estate of Jerry <br> Dean Ferguson and Julie Rene Ferguson <br>    *Debtors/Appellants* <br> <br>    v. <br> <br> WEST CENTRAL FS, Inc. <br>    *Creditor/Appellee* <br> <br> UNITED STATES OF AMERICA <br>    *Creditor/Appellants* <br> <br>    v. <br> <br> WEST CENTRAL FS, Inc. <br>    *Creditor/Appellee* | Case No.: 14-1071 <br> (Consolidated with <br> 14-1070 and 14-1068) |

## ORDER AND OPINION

Jerry Dean Ferguson and Julie Rene Ferguson ("Debtors"), Jeana K. Reinbold, Chapter 7 Trustee of the Estate of Jerry Dean Ferguson and Julie Rene Ferguson ("Trustee"), and the United States of America ("United States") bring this appeal from the August 20, 2013 Opinion and Order issued by United States Bankruptcy Judge Thomas Perkins.  The Order granted the request of Creditor West Central FS, Inc. ("West Central") to marshal the liens of First Community Bank ("FCB") by treating the prior distributions to FCB in 2011/2012 from the proceeds of the sale in 2010 of Debtors' crops and equipment as if paid from the 2013 sale of

their farm so that West Central's claim could be enforced against the proceeds of the equipment and crops. The Debtors, Trustee, and United States are also appealing the Bankruptcy Judge's December 18, 2013 Order denying their motion to reconsider. This Court finds that the Bankruptcy Judge erred in allowing retroactively marshaling and reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

Debtors filed a Chapter 12 petition on April 28, 2010. At that time, FCB had a mortgage against the Debtors' farm and a perfected security interest in their equipment and crops in the amount of $297,066.02. West Central held a perfected junior security interest in the equipment and crops in the amount of $176,330.49, but did not have a mortgage or security claim against the farm realty.

In an attempt to pay off its debts and downsize its farming operations, Debtors made a motion to sell their equipment. West Central responded by asking the Bankruptcy Judge to compel FCB to marshal its liens first against the farm. The Bankruptcy Judge allowed the sale without addressing marshaling. The equipment was sold in August 2010, netting $170,065, but the Bankruptcy Judge did not permit distribution to FCB at that time.

The Debtors also had 2009-harvested crops that were in storage. These crops were sold in 2010. After the Chapter 12 Trustee paid a substantial sum to a secured creditor senior to FCB, $68,069 remained in the estate. Largely due to the sale of the 2009-harvested crops and the sale of the equipment, the Debtors incurred substantial federal and state income tax liabilities for 2010. Specifically, the Debtors owed $193,635 in federal taxes and $17,332 in state taxes.

On February 10, 2011, FCB requested that the net equipment proceeds totaling $170,065 be distributed to it. On February 17, 2011, West Central responded by requesting the Bankruptcy Judge to require FCB to marshal its liens against the realty to free up the proceeds of equipment and crops for West Central's junior lien. On November 28, 2011, the Court denied marshaling

and ordered the equipment proceeds to be distributed FCB finding that it would "grossly inequitable to force FCB to forego the immediate payment of the equipment proceeds being held by the Trustee and, instead, be forced to accept long-term secured claim treatment under the Debtors' plan. In re Ferguson, 2011 Bankr. LEXIS 4581, *6-7, 2011 WL 5910659 (Bankr. C.D. Ill. Nov. 28, 2011).

Although the Court's November 28, 2011 Opinion addressed both the equipment and the crop proceeds, the accompanying order addressed only the equipment proceeds requested by FCB's motion. On January 11, 2012, FCB filed a turnover motion for the remaining $68,069 in net crop proceeds. The motion stated that after application of the $170,065 in equipment proceeds as well as $26,358 it received from liens on titled items paid at the closing, plus another $15,922 in third party checks from crop proceeds that were delivered directly to it, FCB was still owed $156,821, which included over $72,577 in post-petition interest and $21,407 in post-petition late charges on installment payments not timely made. West Central did not object to the distribution of the proceeds of the 2009-harvested crops. The Bankruptcy Judge granted FCB's unopposed motion and ordered distribution of the additional $68,069 balance of crop proceeds on February 10, 2012. No reservation was included with respect to marshaling in that order.

On May 25, 2011, the Debtors proposed a Chapter 12 plan that would treat their 2010 post-petition tax liabilities resulting from equipment and crop sales as dischargeable pre-petition claims under § 1222(a)(2), to which the IRS objected. However, because this issue was pending before the United States Supreme Court the Debtors asked the Bankruptcy Judge to postpone confirmation of the plan to await the Supreme Court's decision. Ultimately, the Supreme Court held that because a Chapter 12 bankruptcy estate is not a taxable entity and the income is treated as that of the individual debtor(s), the tax is not "incurred by the estate" under § 503, therefore not an expense of administration, and thus is not subject to the treatment under § 1222(a)(2),

which may convert only certain *prepetition* priority taxes into a dischargeable non-priority claim. Hall v. United States, 132 S.Ct. 1882 (2012).

In light of Hall, the Debtors filed an amended plan that would pay the 2010 taxes in full. West Central objected, arguing Hall made it improper to use estate money to pay the debtors' postpetition taxes. The Bankruptcy Court agreed and denied confirmation on the premise that proposing to pay the postpetition taxes ran afoul of Hall's "clear proscription against paying any postpetition income taxes through a chapter 12 plan." In re Jerry Dean Ferguson and Julie Rene Ferguson, Case No. 10-81401, Doc. 213 at 6.

On February 4, 2013, the Debtors, being unable to confirm a plan, voluntarily converted the case from Chapter 12 to Chapter 7 and Jeana K. Reinbold was appointed as the Trustee. Under § 348(d), this converted the post-petition tax claims into prepetition priority claims against the Chapter 7 estate. Consistent with the Supreme Court's position in Hall, the IRS had not filed a claim during the Chapter 12 case, but on conversion promptly filed a claim for the 2010 taxes in the amount of $182,088 plus interest. Illinois Department of Revenue similarly filed a claim for $13,999.

In April 2013, the Trustee moved for authority to sell the Debtors' farm. The Trustee's motion stated that "West Central FS, an unsecured creditor, is seeking to establish an equitable claim to the Asset in the approximate amount of $228,883, which is disputed." After West Central objected to a proposed sale for $330,000 to relatives of the Debtors, the farm sold for $411,000. FCB received $127,909.86 in satisfaction of the remainder of its claim. The Debtors received $15,000 each in homestead exemptions. The report of sale indicates that the Trustee received $205,441. Thus, the estate was holding $246,441 netted from the sale of the farm, plus $41,000 transferred by the Chapter 12 Trustee at conversion.

On February 13, 2013, before the sale-authority motion, and in anticipation of it, West Central filed its Restated Motion to Marshal Assets of Debtors, reminding the Court that its order

denying marshaling had noted that liquidation of the farm might change the outcome. The Debtors, the Trustee, and the United States each objected. All three objections assumed that the request would require recovery of the equipment and crop sale proceeds from FCB in order to turn them over to West Central.

The Debtors' objection focused on the inequities they contended would result from allowing marshaling. In addition, they cited In re Center Wholesale, Inc., 759 F.2d 1440 (9th Cir. 1985), describing it as holding that a "junior secured party was not entitled to marshal assets where doing so would prejudice the estate by lessening the amount to pay unsecured creditors." They also argued that "as there are not two funds belonging to the debtor, marshaling is not applicable," citing In re Sherlock, 2008 WL 4277719 (D. Kan. 2008).

The Trustee's objection also argued that there "are no longer two funds." The Trustee took the position that "West Central was a junior lien creditor who is now unsecured" (i.e., because the equipment and crops had been sold and the proceeds had been distributed to FCB). In re Jerry Dean Ferguson and Julie Rene Ferguson, Case No. 10-81401, Doc. 296 at 3. The Trustee further argued that it would be unfair to other unsecured creditors to have funds available for payment to them be depleted by payment to one unsecured creditor.

The United States, by the Assistant United States Attorney who had filed the objection to the original plan for IRS, also objected, approaching the issue from the perspective of whether marshaling was properly denied when the equipment and crops were sold, because it would have delayed and burdened the senior lienholder, FCB, and arguing that denial was proper. The objection argued that

> That deal is now done. The proceeds from the sale of the equipment have been distributed and are no longer assets of the estate. There no longer exists, as is required, two funds belonging to the debtor which may now be divvied up. There is only one asset belonging to the debtor, that of the remaining proceeds from the sale of the real estate.

5

In re Jerry Dean Ferguson and Julie Rene Ferguson, Case No. 10-81401, Doc. 300 at 5.  The gravamen of the United States' argument was that the elements of marshaling were no present and marshaling cannot be imposed because it would burden and prejudice the other parties.

West Central replied, arguing for the first time that "Conversion of the Chapter 12 case to a Chapter 7 case means the marshaling issue relates back to the date of filing for relief." In re Jerry Dean Ferguson and Julie Rene Ferguson, Case No. 10-81401, Doc. 301 at 4.  It also argued that there was no need to recover the distribution already made to FCB since the Trustee was holding sufficient funds from the proceeds of the realty to cover the $238,130 West Central was claiming through marshaling.

The Bankruptcy Judge granted West Central's motion in its August 20, 2013 Opinion. He treated his prior order denying the original motion for marshaling as an interlocutory order, even though there was no reservation on the distribution to FCB. The Bankruptcy Judge observed that all three objections to marshaling assumed that disgorgement of the equipment and crop proceeds by FCB would be necessary to effectuate marshaling. The Bankruptcy Judge held that because money is fungible, the problem could be avoided by "netting," which required treating FCB as having received funds from the farm realty and treating an equivalent portion of the proceeds paid to the Trustee from the real property as proceeds of the equipment and crops, as would have occurred if both had been liquidated together. In response to the argument that FCB had received the equipment and crop proceeds two years ago, the Court held that "marshaling rights are determinable based on the circumstances that existed when the bankruptcy case was filed" and that "[n]either conversion to chapter 7, nor the passage of time, alters the focus." In re Jerry Dean Ferguson and Julie Rene Ferguson, Case No. 10-81401, Doc. 302 at 4. Thus the marshaling rights "that West Central had when the case was filed in 2010 . . . have not changed." Id.

The United States filed a Motion to Reconsider and the Debtors and Trustee joined in that motion. The Bankruptcy Judge denied the Motion to Reconsider in its December 17, 2013 Bench Decision. The Bankruptcy Judge noted that when the case began, "the classic marshaling conditions were present" because FCB "had a first mortgage on real estate against which West Central had no mortgage" and "also held a first priority security interest in equipment and crop proceeds, and West Central had a second priority interest in that personal property collateral." In re Jerry Dean Ferguson and Julie Rene Ferguson, Case No. 10-81401, Doc. 403. The Bankruptcy Judge further reasoned, "It was solely the inequity to First Community that led to denial of marshaling at that time." The Bankruptcy Judge granted marshaling once the farm was sold for the purpose of putting West Central and other unsecured creditors "in substantially the same position financially that they would have been in had marshalling been granted at the time of the filing or when it first came up in this case back in 2011." Id. The Bankruptcy Judge explained "as I indicated in the second marshaling opinion that First Community will be considered to have been paid first from the real estate proceeds and West Central will be treated as being paid from the crop and equipment proceeds." Id.

In the same Order, the Bankruptcy Judge, responded to the United States' argument that granting marshaling at this stage represented a "legal fiction" in effect to "pretend . . . that First Community really got paid from the real estate proceeds when, in fact, it didn't" because, the Court explained, the monies are "fungible" and if the earlier distribution had not been made, the proceeds of the various assets would have been commingled in the trustee's bank account. Id. The Debtors, Trustee and United States appealed the Bankruptcy Judge's Order.

Following this Court's remand to complete the proceedings, on February 5, 2014, the Trustee filed the Trustee's Final Report proposing a distribution to West Central in the amount of $176,330.49 – its petition-date claim – subject to prior exhaustion of appeals. West Central objected, claiming it had a right to the full $238,130.03 in equipment and crop proceeds and

post-petition interest because it was fully secured on the petition date and the real property would have fully covered FCB's senior lien with marshaling on that date.

The Debtors also objected to the final report, arguing that it "proposes to pay a debt that, at the time of conversion, was unsecured, in full; while leaving the Debtors with a substantial, non-dischargeable, priority claim." The United States filed a reply to West Central's objection arguing that if marshaling is measured as of the petition date then West Central should not receive post-petition interest. It also argued that the result was inequitable under all the circumstances. Finally, the government argued that the ongoing proceedings confirmed that the prior orders were interlocutory, so the motion to reconsider was not under Rule 59, and the § 544 issue should not be deemed waived under the circumstances. At a hearing on May 14, 2014, the Trustee joined the government's renewed request that the Court apply § 544 and reject marshaling.

The Bankruptcy Judge's June 18, 2014 Opinion agreed with West Central's objections to the Final Report. The Court held that marshaling was limited to allowing FCB to be "treated as being paid in full from the real estate proceeds, leaving the equipment and crop proceeds for the benefit of West Central." After that, the amount of West Central's claim was purely a matter of federal bankruptcy law and specifically §506(b), which allows interest and fees if the value of a creditor's collateral exceeds its claim. Again the Bankruptcy Judge viewed the marshaling as taking effect as of the petition date, when the value of the equipment and crops was presumably what they later sold for ($238,000). The Court rejected the United States' argument that West Central's premature request for marshaling caused FCB's claim to accrue additional interest, stating there was no factual support for this. The Court also viewed the United States as blaming West Central for delaying the sale of the farm and rejected that supposed contention, stating that it was the Debtors who caused the delay by asking to postpone confirmation of their plan while <u>Hall</u> was pending.

8

The Debtors, Trustee, and the United States have appealed the Bankruptcy Judge's August 20, 2013 Opinion and Order granting West Central's request to marshal the liens of FCB and his December 18, 2013 Order denying their motion to reconsider. The Court held oral arguments on September 2, 2015.

## DISCUSSION

The Debtors, Trustee, and United States raise the following issue on appeal: whether the Bankruptcy Judge erred as a matter of law or abused his discretion in granting West Central's restated motion for marshaling and/or denying reconsideration of that ruling. This Court has jurisdiction to review the decision of the Bankruptcy Judge pursuant to 28 U.S.C. § 158(a). District courts are to apply a dual standard of review when considering a bankruptcy appeal. The findings of fact of the Bankruptcy Judge are reviewed for clear error, while the conclusions of law are reviewed *de novo*. In re Midway Airlines, 383 F.3d 663, 668 (7th Cir. 2003); In re Smith, 286 F.3d 461, 465 (7th Cir. 2002); In re Yonikus, 996 F.2d 866, 868 (7th Cir. 1993); In re Ebbler Furniture and Appliances, Inc., 804 F.2d 87, 89 (7th Cir. 1986); see also, Bankruptcy Rule 8013 (West 1995).

"The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor who may resort to only one of the funds." Meyer v. United States, 375 U.S. 233, 236 (1963) *quoting* Sowell v. Federal Reserve Bank, 268 U.S. 449, 456-457 (1925). Although there is no statutory language in the Bankruptcy Code that allows the bankruptcy court to order marshaling, courts have routinely held that bankruptcy courts have that power. See In re Jack Green's Fashions for Men-Big & Tall, Inc., 597 F.2d 130 (8th Cir. Mo. 1979)(federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases); see also Pepper v. Litton, 308 U.S. 295, 304 (1939); Victor Gruen Assoc., Inc. v. Glass, 338 F.2d 826, 829 (9th Cir. 1964); In re Jack Green's Fashions for Men - Big and Tall, Inc., 597 F.2d 130,

133 (8th Cir. 1979); In re A.H. Robins Co., Inc., 880 F.2d 694, 701 (4th Cir. 1989); In re Dow Corning Corp., 280 F.3d 648, 656 (6th Cir. 2002).

The traditional elements of marshaling are: (1) the existence of two creditors of the same debtor; and (2) the existence of two funds belonging to a common debtor; with (3) only one of the creditors having access to both funds; and with (4) the absence of prejudice to the senior secured creditor if the doctrine is applied. Id. see also Hoffman v. Hartley (In re Hartley), 483 B.R. 700, 706 (Bankr. W.D. Wis. 2012); See In re Wm. Pietsch Co., 200 B.R. 207, 210 (Bankr. E.D. Wis. 1996).   A junior creditor's right to impose marshaling is determined by state law. See In re High Strength Steel, Inc., 269 B.R. 560, 572 (Bankr.D.Del. 2001). It is well-settled that the Illinois Supreme Court has long recognized the equitable remedy of marshaling. See Doyle v. Murphy, 22 Ill. 502 (1859). However, the doctrine will not be applied if it causes injury to the senior creditor. See Boone v. Clark, 129 Ill. 466, 481, 21 N.E. 850 (1889).

As part of its analysis, the Court reviewed the Bankruptcy Judge's first order denying West Central's first request for marshaling. See In re Ferguson, 2011 Bankr. LEXIS 4581, 2011 WL 5910659 (Bankr. C.D. Ill. Nov. 28, 2011).  There the Bankruptcy Judge rejected West Central's requesting finding that marshaling would be detrimental and "grossly inequitable" to the senior creditor, FCB. Id. at 5.  As a backup plan to its request for marshaling, West Central asked the bankruptcy court to the adopt a settlement between it and FCB, in which both FCB and West Central would receive a portion of the monies owed from the crop and equipment sales. The balance of FCB's claim would remain secured by its mortgage on the Debtors' property and West Central would receive a second mortgage on the Debtors' property to secure its remaining claim.

In rejecting West Central's settlement proposal, which the Debtors were not party to, Judge Perkins reasoned:

> WCFS'S proposal cannot be accepted as an alternative to marshaling. As applied by Illinois courts, ***marshaling is an either/or proposition. If the proper conditions for its application are not present, marshaling is rejected and the junior creditor is left with the natural consequences of its subordinate status.*** This Court is not aware of any reasoned basis to justify creating some kind of modified marshaling remedy in the name of equity. Equity, like beauty, is often in the eye of the beholder. A remedy that benefits one party may penalize another. The DEBTORS would be adversely affected if their real estate were to be encumbered by a second mortgage. Unsecured creditors could suffer as well if the amount they would receive in a hypothetical liquidation were suddenly reduced (emphasis added).

In re Ferguson, 2011 Bankr. LEXIS 4581, *6-7, 2011 WL 5910659 (Bankr. C.D. Ill. Nov. 28, 2011). This Court finds that Judge Perkins' analysis above is well-reasoned and consistent with the well-settled case law. Furthermore, West Central conceded during oral argument that marshaling was not appropriate at the time it made its initial request, but that the request was made to create a record.

In the same opinion, the Bankruptcy Judge opined his denial of marshaling was predicated on the "Debtors' retention of the real estate as proposed in their Chapter 12 plan. If liquidation of the real estate occurs, the Court would consider revisiting the issue of marshaling." Id. *7. It is at this juncture that this Court must part ways with the Bankruptcy Judge. The Bankruptcy Judge's reservation of West Central's marshaling request is inconsistent with his analysis that marshaling is an either/or proposition – the factors for marshaling are present or they are not. This Court agrees marshaling was not appropriate when West Central first made the request and finds that no subsequent actions that occurred throughout the course of these proceedings warranted marshaling.

It is undisputed that West Central satisfies the first element necessary for marshalling because the Debtors have two lien holders involved in this matter, the first being FCB and the second being West Central. It is the remaining three elements West Central fails to prove.

The second element that must be present in order to show that marshaling is appropriate is the Debtor must have two funds. A review of the record in this case indicates that at the time the Bankruptcy Judge granted West Central's restated request for marshaling the Debtors did not have two funds available to them. Although the Bankruptcy Judge and West Central are of the opinion that the Debtors held two funds stemming from the liquidation of the real estate and sale of the crops and equipment, in actuality, Debtors did not have any funds belonging to them at that time.[1] The Debtors sold the crops and equipment and the proceeds distributed to FCB in 2011 and 2012. Thus the proceeds from the crops and equipment were no longer part of the estate when the bankruptcy court ordered marshaling in 2013. See In re Chicago, R. I. & P. R. Co., 794 F.2d 1182, 1186 (7th Cir. 1986)("When a bankrupt railroad (or any other bankrupt) sells property with the approval of the court, the buyer acquires title clear of all claims in the bankruptcy. The property may not be hauled back into the estate, and the terms of the sale are inviolate in the absence of fraud or collusion.") See also, In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir. 1978); In re Suchy, 786 F.2d 900 (9th Cir. 1985).

West Central fails to satisfy the third condition necessary for marshaling for similar reasons the Court set forth when analyzing the second prong of the marshaling test. When the marshaling was approved in 2013, two funds were not available. FCB held a perfected security interest in the real estate, crops, and equipment. West Central held a junior perfected security interest in the crops and equipment proceeds only, which ceased to be a part of the bankruptcy estate when the funds were distributed to FCB in 2011 and 2012. At the time of the distribution to FCB, West Central's security interest ceased to exist, leaving West Central as an unsecured creditor. Accordingly, because the only monies that remained were from the proceeds of the sale

---

[1] The Debtors, Trustee, and United States raise a secondary argument that the Trustee's rights pursuant to 11 U.S.C. § 544 were not waived and that the Trustee rights under §544 allow her to block marshaling. The Court feels that its analysis regarding marshaling is dispositive of the issue raised on appeal; therefore, the Court will not address parties' § 544 argument.

of real estate and FCB was the only remaining lien holder, marshaling was not an appropriate remedy.

Lastly, West Central fails to satisfy the fourth prong of the marshaling analysis. West Central argues marshaling can be applied, despite injury to any third parties, as long as it does not prejudice creditors with an equal or senior interest. West Central essentially argues that because it was a secured creditor when the Debtors filed for bankruptcy, its security interest survives the bankruptcy proceedings despite any intervening events. Missing from the West Central's argument and analysis is that it had a security interest in the crops and equipment proceeds only and those proceeds left the estate in 2011 and 2012. Contrary to West Central's argument, it was not on equal footing at the time marshaling was ordered because FCB was a secured creditor whereas West Central was an unsecured creditor. When applying the facts of this case to the marshaling standard, the Court finds that the Bankruptcy Judge erred by allowing marshaling in its August 20, 2013 Order and Opinion; therefore, the decision by Bankruptcy Judge is reversed.

There is never a clear winner in a bankruptcy proceeding. The Debtors lose their livelihoods and many creditors both secured and unsecured will not receive all the monies they are owed. As counsel pointed out during oral argument, West Central started out as a secured creditor and has been part of this case since the filing of the initial Chapter 12 petition. As the proceedings continued over several years, West Central became a victim of timing, new case law, and other unforeseen events and now finds itself in the same position as all the other unsecured creditors. However, West Central is not blameless in this situation. West Central understood early on in this proceeding that they did not have a secured interest in the Debtor's real estate as evidenced by its attempt to secure a second mortgage on Debtors' real estate during settlement negotiations with FCB in 2011.

In addition, after the Bankruptcy Judge denied its initial request marshaling and allowed distribution of the equipment and crops proceeds to FCB, West Central did not take any additional steps to protect their security interest.  Notably, West Central did not file an objection to the distribution of the equipment and crops proceeds.  Had West Central objected and prevailed, and the funds not been distributed to FCB and stayed in the estate, there would have arguably been two funds available when the real estate was sold.  West Central argues that it made no objection because it relied on the Bankruptcy Judge's assertions that the denial of marshaling was predicated on whether Debtors' liquidated their real estate; therefore, it had reason to believe that marshaling would occur when the real estate was sold.   That belief could only reasonably extend so far and while the Court appreciates, under these circumstances, the Bankruptcy Judge's attempts to protect West Central's interest, the fact is that once distribution to FCB was ordered marshaling was no longer viable.  This Court finds that because marshaling was an inappropriate remedy as applied to facts of this case West Central is now "left with the natural consequences of its subordinate status" as an unsecured creditor.  Ferguson, 2011 Bankr. LEXIS 4581 at *6.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Judge's August 20, 2013 Order allowing marshaling and December 18, 2013 Order denying the Motion to Reconsider are reversed, and the case is remanded for further proceedings in accordance with this opinion.

Entered this 11th day of September, 2015.

/s/ James E. Shadid
James E. Shadid
Chief United States District Judge